El Pueblo de Puerto Rico, demandante y apelado, *v.* Anastasio Andrades, acusado y apelante.

No. 2599.—*Visto:* Diciembre 4, 1925. *Resuelto:* Abril 30, 1926.

1. Derecho Penal—Apelación y Error, y Certiorari—Revisión—Cuestiones Discrecionales—Suspensión del Juicio.—Dentro de las circunstancias concurrentes en el caso de autos se resolvió no podía decirse que la corte inferior abusara de su discreción al denegar la moción sobre suspensión de la vista del juicio.

2. Derecho Penal—Venue—Sitio Donde Debe Establecerse el Proceso—Reorganización de Distritos Judiciales.—Cuando la demarcación territorial dentro de la cual se comete un delito se incluye dentro de los límites territoriales de otro distrito nuevamente creado, la corte de este distrito tiene jurisdicción exclusiva del delito a menos que la jurisdicción de la corte del viejo distrito no se continúe por el estatuto que reorganizó dichos distritos.

3. Derecho Penal—Evidencia—Peso y Suficiencia—Evidencia del Sitio en que el Delito se Cometió.—Habiéndose alegado en este caso que no se probó el sitio en que el delito se cometió, *se resolvió:* que en vista de todas las circunstancias, el sitio quedó razonablemente probado.

4. Derecho Penal—Apelación y Error, y Certiorari—Revisión—Veredictos—Veredicto que se Alega Ser Contrario a las Pruebas.—En este caso se ataca el veredicto del jurado por ser contrario a la prueba. Considerados

y discutidos los particulares más importantes levantados por el apelante en su alegato, se resolvió no había base para anular el deliberado veredicto del jurado formado como consecuencia necesaria de la prueba.

Sentencia de *M. Rodríguez Serra*, J. (Segundo Distrito, San Juan), condenando al acusado por delito de asesinato en segundo grado. *Confirmada.*

*Eduardo López Tizol*, abogado del apelante; *José E. Figueras*, abogado de *El Pueblo*, apelado.

El Juez Asociado Señor Hutchison, emitió la opinión del tribunal.

[1] El primer error que alega el apelante es que la corte de distrito incurrió en error al declarar sin lugar la moción sobre suspensión de la vista del juicio. La moción muestra por su faz que habían transcurrido más de siete meses desde el día del arresto; que durante este período el acusado había estado representado por varios abogados en diferentes estados del procedimiento; que al tener noticia del día señalado para el juicio ya hacía más de diez días que había sido nombrado un abogado para defender el caso; que este abogado abandonó el asunto dos días antes del juicio y que el abogado que compareció al juicio dedicó el tiempo que tuvo disponible en obtener certificaciones de la corte municipal donde el acusado había sido declarado culpable de acometimiento y agresión con anterioridad a la muerte de la víctima.

Esta moción fué presentada al ser llamado el caso para juicio. Pudo haberse llegado al sitio del crimen en cualquier momento en diez o quince minutos por los medios corrientes de comunicación que hay entre la zona comercial de San Juan y sus inmediaciones. La moción no revela ningún esfuerzo por parte del abogado designado últimamente por obtener del anterior abogado cualesquiera datos o informes, ni muestra tampoco por qué no se hizo tal esfuerzo; ni aparece de la moción que tuviera el abogado algún motivo para creer que podría encontrar algo nuevo en cuanto a la prueba en caso de una suspensión.

Dentro de las circunstancias no podemos decir que la ·
corte inferior abusara de su discreción al denegar la moción.

[2] El segundo señalamiento de error es que la Corte·
de Distrito del Segundo Distrito de San Juan carecía de
jurisdicción para celebrar el juicio por haberse formulado
la acusación por el Gran Jurado del primer distrito.

En el año 1923 y después de haber sido devuelta la acu-
sación (*indictment*) la Legislatura reorganizó las cortes de
distrito para el distrito judicial de San Juan e incluyó en
los límites territoriales del segundo distrito, así nuevamente
creado, aquella demarcación de la municipalidad donde el
delito en cuestión había sido cometido. Entonces la corte
de distrito del primer distrito, a petición del fiscal, ordenó
el traslado de este caso.

Se indica también en el alegato que el reconocer la ju-
risdicción de la corte dè distrito del segundo distrito sobre
los delitos cometidos con anterioridad a la organización de
dicho nuevo distrito dentro de la anterior jurisdicción te
rritorial de la corte de distrito del primer distrito, sería
dar al estatuto un efecto retroactivo.

Sería bastante con decir que no se cita ninguna autori-
dad en apoyo de una u otra de estas proposiciones y que
no hay razón alguna por la cual esta corte tenga más inte-
rés en el asunto que el que ha tenido el apelante. Pero
véase a 16 C.J., pág. 197, párrafo 296.

[3] La tercera proposición es que no se probó el sitio
en que se cometió el delito. Correspondía al fiscal probar
que el delito fué cometido al lado sur de la avenida Ponce
de León, o sea, dentro de la sección del municipio que está
entre la avenida y el frente de la bahía.

La prueba en conjunto muestra que la disputa empezó
en una casa de la calle de San Agustín en Puerta de Tierra;
que la víctima del subsiguiente acometimiento al salir de
esta casa fué seguida por el acusado y que el golpe fatal

fué dado a unos cinco metros de distancia del balcón de otra casa en la calle de San Agustín. Algunos de los testigos se refirieron a los sucesos que precedieron inmediatamente al acometimiento como que tuvieron lugar en un punto al sur de la vía.

La calle de San Agustín en la mayor parte de su longitud está en sentido paralelo a la avenida de Ponce de León y al sur de ella. Quizás es cuestión de conocimiento judicial, o un hecho del conocimiento del jurado, que la vía del carro eléctrico en Puerta de Tierra está al lado sur de la avenida de Ponce de León y al sur de la calle de San Agustín. No existe nada en la declaración de ninguno de los testigos que tienda terminantemente a mostrar que el acusado cruzó una u otra de estas vías, o la avenida en algún momento hasta el tiempo de cometer el delito.

En vista de todas las circunstancias, el sitio parece haber sido razonablemente probado y como también ocurre con frecuencia inexcusable, parece que se llegó a este resultado por casualidad más bien que por un verdadero propósito.

[4] El cuarto señalamiento es que el veredicto es contrario a la prueba. Se ha insistido mucho en el hecho de que un policía que hizo el arresto y declaró que el practicante que practicó la curación de la herida había dicho al testigo que dicha herida no pudo haberse producido con el cuchillo que entonces fué presentado y sin embargo formuló denuncia en la corte municipal por un delito de acometimiento y agresión que se alegó fué cometido con el cuchillo en cuestión. La explicación que en cuanto a esto da el testigo en el interrogatorio de repreguntas no es muy satisfactoria, pero el efecto de tal incompatibilidad sobre el valor probatorio de esta declaración era cosa que correspondía al jurado resolver.

La declaración del médico que hizo la autopsia también

se ataca. Su narración no deja lugar a duda respecto a la causa de la muerte. La conclusión a que llegó este testigo respecto a la profundidad de la herida original basada en su condición al verificarse la autopsia y al encontrar una fractura del hueso a unas tres o cuatro pulgadas de la masa encefálica a penas si puede armonizarse con el hecho establecido por otra prueba de que el herido con la ayuda de otras dos personas caminó desde el sitio del suceso a una sala de socorros y después de curada la herida siguió solo para su casa.

El fiscal de esta corte dice en relación con el tiempo que transcurrió entre la fecha en que se causó la herida y el día de la muerte como explicación lógica, que el hueso por gravedad se desprendió de su sitio y bajó algunas pulgadas según se vió de la autopsia practicada. La cuestión no es importante en el estado actual del procedimiento excepto en lo que pueda servir para explicar la naturaleza poco satisfactoria de la prueba pericial con referencia a las conclusiones que pudieran hacerse fácilmente por el mismo jurado, y la consiguiente impropiedad de permitir que tal prueba fuera al jurado después de haberse formulado la debida objeción. En el presente caso, sin embargo, no se ha levantado ninguna cuestión como ésta y la conclusión a que llegó el médico en cuanto a la profundidad de la herida como fué causada no suministra base alguna adecuada para anular el deliberado veredicto de un jurado formado como consecuencia necesaria de la prueba en conjunto.

Otros particulares que se discuten en el alegato son factores de menos importancia todavía en el resultado general y no requieren seria consideración.

*Debe confirmarse la sentencia apelada.*